## A. A. HELWIG AND EVA S. HELWIG, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82241.   Filed March 7, 1962.

*Monroe F. Marsh, Esq.*, for the petitioners.
*Alfred L. Margolis, Esq.*, for the respondent.

1052

OPINION.

RAUM, *Judge:* While in form the transactions here involved differ somewhat from the transactions considered in *Amor F. Pierce*, 37 T.C. 1039, decided this day, we think they are the same in fact. The inclusion in this case of a purported 1-day loan from a commercial lending institution, the Farmers and Stockmens Bank of Phoenix, Arizona, adds not one jot of substance to this case. It is clear on this record that at most the bank lent petitioner the use of its name, not it funds, and that in reality petitioner neither borrowed money from nor paid interest to either the bank or the All Service Life Insurance Corporation. Thus, as in the *Pierce* case, we think that the respondent's disallowance of petitioner's claimed interest deductions must be upheld on the authority of *Knetsch* v. *United States*, 364 U.S. 361. Cf. *William R. Lovett*, 37 T.C. 317.

Petitioner would have us believe that for an out-of-pocket cost of $14,555.60 in 1955 he purchased 10 retirement life annuity contracts with an aggregate annual premium of $200,000, borrowed $234,880 on the security of such contracts, and paid some $49,435.60 interest in advance on the resulting loans. In form, this is exactly what he did do—all on December 29, 1955. In fact, however, petitioner purchased no annuities and borrowed no funds. He willingly paid $14,555.60 as so-called interest payments to All Service and the bank as the "fee for providing the facade of 'loans' " (*Knetsch* v. *United States, supra* at 366) whereby he hoped to reduce his Federal income tax.

The bank's participation herein was merely commercial window dressing. By prearrangement with All Service, the bank had agreed to go through the ritual of making "loans" to All Service's annuity holders and then assigning such "loans" to All Service 1 working day later. Petitioner was fully informed of this system prior to entering the transaction. In substance, the bank made no loans to customers of All Service such as petitioner and risked none of its money. For a small service charge, it permitted the use of its name in such transactions and served as a conduit of the so-called interest payments to its depositor, All Service. In these circumstances, the $7,341.20 paid

by petitioner to the bank on December 29, 1955, does not qualify as "interest paid * * * on indebtedness" under section 163 of the 1954 Code any more than does the $42,094.40 paid by petitioner to All Service on the same day.

We heard testimony regarding the supposed economic reality of these transactions, suggesting that petitioner had a bona fide intention to acquire these annuities for genuine business reasons. The short answer is that we do not believe it.

We do not reach the question, raised by the parties on brief, whether section 264 of the 1954 Code would prevent the deduction of the so-called interest payments in issue, assuming these transactions had not been lacking in substance.

*Decision will be entered for the respondent.*